Stephen M. Rathkopf
David Feuerstein
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Email: srathkopf@herrick.com
       dfeuerstein@herrick.com
Phone: (212) 592-1400
Fax: (212) 592-1500
*Attorneys for Plaintiff Impala Partners, LLC*

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

IMPALA PARTNERS, LLC,

              Plaintiff,

-against-

MONEYGRAM INTERNATIONAL, INC. and
MONEYGRAM PAYMENT SYSTEMS, INC.

              Defendants.
------------------------------------------------x

Case No.

**COMPLAINT**

Plaintiff Impala Partners, LLC ("Plaintiff" or "Impala"), by and through its attorneys, Herrick, Feinstein LLP, for its Complaint against defendants MoneyGram International, Inc. ("MGI") and MoneyGram Payment Systems, Inc. ("MPSI", who along with MGI will collectively be referred to herein as "Defendants"), respectfully alleges as follows:

**Introduction**

1.    This action for money damages arises out of Defendants' wrongful refusal to pay Impala for the consulting services that Impala rendered in the Spring of 2009.

2.    As set forth more fully below, MGI asked Impala to perform a review of the "cost structure and processes" associated with its business and agreed to pay Impala twenty percent of any savings Defendants realized from Impala's recommendations.

3. After spending over three months reviewing and analyzing MGI's cost structure -- including the cost structure of MGI's wholly-owned subsidiary, MPSI -- Impala presented its cost-saving recommendations to MGI's then senior-management, including its Chief Executive Officer, Tony Ryan ("Ryan"), its Executive Chairman (who is now MGI's Chief Executive Officer and Chairman of the Board), Pam Patsley ("Patsley"), and its Controller, Jean Benson ("Benson").

4. Upon information and belief, Defendants have since implemented virtually all of Impala's cost-saving suggestions, and as a result, have achieved over $9 million in cost savings. Nonetheless, Defendants have refused to pay Impala the twenty-percent fee it owes pursuant to the parties' agreement.

5. Accordingly, Impala seeks an order awarding it (i) money damages in an amount to be determined at trial but in no event less than $1,831,444.80, together with interest thereon, and (ii) whatever further relief that the Court deems just and proper.

## The Parties

6. Plaintiff Impala is a limited liability company organized under the laws of Connecticut with its principal place of business located in Norwalk, Connecticut. Impala's members reside in Connecticut and Florida.

7. Defendant MGI is a Delaware corporation that is publicly traded on the New York Stock Exchange. While MGI maintains its corporate headquarters in St. Louis Park, Minnesota, it also maintains offices in the State of New York. In addition, MGI boasts on its website that it maintains locations in 364 cities in the State of New York.

8. Defendant MPSI is a wholly owned subsidiary of MGI and is the vehicle through which MGI primarily conducts its various businesses. MPSI is a Delaware corporation

that also maintains its corporate headquarters in St. Louis Park, Minnesota, and upon information and belief, has the same corporate officers and directors as MGI.

9. MPSI is registered with New York's Secretary of State to do business in New York and is licensed by the New York State Banking Department as a "money transmitter".

### Venue and Jurisdiction

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the case is between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest.

11. Venue is appropriate in this forum pursuant to 28 U.S.C. §§ 1391(a) and (c) because MGI and MSPI are corporations that are subject to personal jurisdiction in New York.

### Facts

A. The February 2009 Agreement

12. On or about January 21, 2009, individuals from Impala travelled to Minnesota and met with Ryan, Patsley, Benson and MGI's Chief Financial Officer, David Parrin to discuss the possible retention of Impala to render cost-saving services to Defendants.

13. Impala had been introduced to MGI by Thomas M. Hagerty and Scott L. Jaeckel, both of whom were and continue to be managing directors with Thomas H. Lee Partners ("THL") (MGI's single, largest shareholder), and members of the Board of Directors of MGI.

14. As part of the January 21st presentation, Impala introduced the concept that it would be paid only if Defendants recognized a savings from Impala's analysis and recommendations.

15. MGI agreed with Impala's proposed fee arrangement and soon thereafter retained Impala.

16. In February 2009, MGI and Impala reduced the terms of their agreement to writing (hereinafter referred to as the "February 2009 Agreement").

17. Pursuant to the February 2009 Agreement, Impala agreed to review MGI's "cost structure and processes", including, among other things, MGI's (i) "Overhead, administration & support infrastructure" such as MGI's call center in Denver, Colorado, its business technology, and its finance and sales & marketing departments, (ii) "Process (and related costs) for 'on boarding' new agents", (iii) "Use of outside professionals", and (iv) "Costs of regulatory compliance and oversight".

18. In return for Impala's services, MGI agreed to (i) reimburse Impala for the out-of-pocket expenses Impala incurred during the term of the February 2009 Agreement, and (ii) pay Impala a fee equal to twenty percent of any savings that MGI achieved as a result of Impala's cost-saving recommendations.

B.   <u>Impala Performs Its Obligations Pursuant to the February 2009 Agreement</u>

19. In early March 2009, Impala began reviewing MGI's various businesses, including the business of MPSI.

20. As part of that review, Impala interviewed numerous MGI employees to familiarize itself with MGI's businesses and gain insight into areas in which MGI could realize potential cost savings.

21. On March 24, 2009, Impala met again with executives from MGI to report on its initial findings and to brainstorm on the areas in MGI's business that Impala should focus on going forward.

22. Less than one month later (i.e., on April 22, 2009), Impala provided an update on its activities to Ryan, Patsley, Benson and other MGI senior executives.

23. During the April 22nd meeting, no one from MGI objected to the work that Impala was doing or suggested that Impala was doing anything not agreed to during the parties' March 24th meeting.

24. On June 3, 2009, Impala made its final presentation to MGI, in which it presented its final cost-saving recommendations to MGI's then senior management, including Ryan, Patsley and Benson.

25. Impala's presentation -- which lasted approximately three hours and included a lengthy question and answer period between Impala and MGI's executives -- was the by-product of three months of work by Michael Borom (who at the time, was a member of Impala), Erik Hayes (an employee of Impala) and Franco Mueller (a consultant to Impala), all of whom worked full-time on the MGI project.

C. <u>MGI Refuses to Pay Impala Even Though it Concedes That Impala Performed Under the Agreement and is Owed Money</u>

26. Between March and June of 2009 MGI reimbursed Impala for Impala's out-of-pocket expenses as it was required to do under the February 2009 Agreement.

27. But when it came time to pay Impala the twenty-percent fee, MGI refused to pay Impala what was due and owing, or any portion thereof, even though MGI repeatedly acknowledged that it had achieved significant savings as a result of Impala's recommendations.

28. For example, on or about September 11, 2009, Borom -- who had left Impala to become a managing director at THL and was working as the person in charge of implementing Impala's cost-saving recommendations into MGI's various businesses -- advised

Mueller that MGI had realized close to $5 million in cost-saving from the recommendations presented by Impala three months earlier.

29. And in March 2010, Borom confirmed that MGI had implemented virtually all of the cost-saving measures that were suggested by Impala (even though MGI could have refused to implement one or all of Impala's suggestions).

30. In fact, Borom acknowledged on at least two different occasions that MGI had implemented most of Impala's cost-saving suggestions and that as a result of those suggestions, Defendants would recognize cost savings well in excess of $10 million.

31. In or around that same time (i.e., March 2010), Benson -- who was and is MGI's Controller -- confirmed that MGI owed Impala money for the cost savings that MGI had realized from Impala's suggestions.

32. Nevertheless, MGI has refused to pay Impala's fee pursuant to the terms of the February 2009 Agreement.

### First Cause of Action
### (Breach of Contract as against MGI)

33. Impala repeats and realleges the allegations set forth in Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34. In or about February 2009, Impala and MGI entered into the February 2009 Agreement, which is a binding and enforceable agreement.

35. Pursuant to the terms of the February 2009 Agreement, Impala was obligated to review and analyze MGI's business (including the business of MPSI) and to then recommend cost-saving measures for MGI's consideration.

36. Impala fully performed all of its obligations under the February 2009 Agreement.

37. Thus, pursuant to the February 2009 Agreement, MGI is obligated to pay Impala a fee equal to twenty percent of the annualized savings that MGI has achieved as a result of Impala's recommendations.

38. Upon information and belief, the savings realized by MGI as a result of Impala's recommendations is at least $9,157,224.00.

39. Accordingly, MGI owes Impala at least $1,831,440.80, together with interest thereon.

40. MGI's refusal to pay Impala constitutes a breach of the February 2009 Agreement.

41. As a result of MGI's breach, Impala has been damaged in an amount to be determined at trial but in no event less than $1,831,440.80, together with interest thereon.

## Second Cause of Action
### (Unjust Enrichment as against All Defendants)

42. Impala repeats and realleges the allegations set forth in Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

43. After three months of analyzing and reviewing MGI's business -- and not being paid for its work -- Impala presented its cost-saving recommendations to MGI's then-senior management.

44. Upon information and belief, MGI subsequently implemented virtually all of Impala's cost-saving recommendations.

45. As a result of implementing Impala's recommendations, MGI and MPSI have collectively realized at least $9,157,224.00 in savings.

46. Nonetheless, Defendants have refused to pay Impala for its three months of work and ideas.

47. In so doing, Defendants have been unjustly enriched to Impala's detriment.

48. Accordingly, Impala has been damaged in an amount to be determined at trial but in no event less than $1,831,440.80, together with interest thereon.

WHEREFORE, Impala demands judgment as follows:

(a) on its First Cause of Action, an order awarding Impala money damages in an amount to be determined at trial but in no event less than $1,831,440.80;

(b) on its Second Cause of Action, an order awarding Impala money damages in an amount to be determined at trial but in no event less than $1,831,440.80;

(c) awarding Impala interest;

(d) awarding Impala its costs and expenses in litigating this action, including its attorneys' fees; and

(e) awarding Impala such other and further relief as the Court deems just and equitable.

Dated: New York, New York
       June 21, 2010

HERRICK, FEINSTEIN LLP

By: _____
Stephen M. Rathkopf
David Feuerstein
2 Park Avenue
New York, New York 10016
*Attorneys for Impala Partners, LLC*